808 So.2d 354 (2000)
Debra Sharp SHAFFER
v.
Darryl Lynn SHAFFER.
No. 00 CU 1251.
Court of Appeal of Louisiana, First Circuit.
September 13, 2000.
Writ Denied November 13, 2000.
*355 Benjamin P. Mouton, Baton Rouge, for Plaintiff/Appellant, Debra Sharp Shaffer.
Floyd J. Falcon, Jr., Baton Rouge, for Defendant/Appellee, Darryl Lynn Shaffer.
Before: CARTER, C.J., WEIMER, and FONTENOT,[1] JJ.
CARTER, C.J.
Following a hearing on the father's motion to change domiciliary status concerning the minor daughter, the trial court modified the joint custody arrangement by changing domiciliary parent status from the mother to the father. The mother appeals.

FACTS
Darryl Lynn Shaffer, Sr. and Debra Sharp Shaffer were married on November 19, 1983, and lived in East Baton Rouge Parish until they separated on June 10, 1995. Two children were born during the marriage, Darryl Lynn Shaffer, Jr., (Darryl, Jr.) on November 11, 1987, and Kristen Nicole Shaffer, on March 23, 1995. Mrs. Shaffer filed a petition for divorce, *356 and the parties later entered into a stipulated judgment, signed on December 5, 1995, awarding joint custody and designating Mrs. Shaffer as domiciliary parent of both children subject to Mr. Shaffer's visitation. Under this judgment, Mr. Shaffer was granted visitation with Kristen the first full week of each calendar month, and the third full weekend of each calendar month.
Mrs. Shaffer moved from Baton Rouge to Lafayette in early 1996 to accept a job promotion and then filed a motion for judgment of divorce. Mr. Shaffer filed an answer requesting a change in custody from the December 5, 1995 judgment. Mr. Shaffer alleged Mrs. Shaffer's relocation to Lafayette constituted a change in circumstances. Mr. Shaffer sought to be designated as the domiciliary parent of Darryl, Jr., and that custody of Kristen be shared on an alternating weekly basis rather than the visitation schedule specified in the December 5, 1995 judgment.
On May 21, 1996, the parties were divorced, reserving a decision on custody and support. After trial on the merits on July 17, a judgment signed on November 25, 1996, designated Mr. Shaffer as the primary domiciliary parent of Darryl, Jr., granting Mrs. Shaffer specified visitation. The judgment further stated, "[t]he domiciliary and visitation arrangements for Kristen Nicole Shaffer shall remain as previously fixed."
In December of 1998, Mr. Shaffer filed a motion to change primary domiciliary status, seeking to be named Kristen's domiciliary parent. Mrs. Shaffer filed an answer and reconventional demand seeking to remain the domiciliary parent and to eliminate Mr. Shaffer's weekday visitation with Kristen. No change in custody or visitation was sought with respect to Darryl, Jr. The trial court judgment signed on February 16, 2000, modified joint custody of Kristen by designating Mr. Shaffer as the domiciliary parent. The court further ordered that once school begins in the fall of 2000 and during the holidays, Mrs. Shaffer's visitation with Kristen would coincide with her previously ordered visitation with Darryl, Jr.
Mrs. Shaffer appealed, alleging as an assignment of error that the trial court erred in concluding that the November 25, 1996 judgment was not a considered decree. Alternatively, Mrs. Shaffer claimed that if the trial court was correct in finding that the prior judgment was a considered decree, the trial court erred when it concluded that Mr. Shaffer proved a change in circumstances materially affecting the child's welfare and that a change in domiciliary status was in the child's best interest. She further alleged that the trial court abused its discretion by refusing to allow her to introduce her expert's affidavit and by acting as an advocate in questioning witnesses.

BURDEN OF PROOF
The burden of proof on a party seeking to modify a prior permanent custody award is dependent on the nature of the original custody award. Custody awards are commonly made in two types of decisions. The first is through a stipulated judgment, such as when the parties consent to a custodial arrangement. The second is through a considered decree, wherein the trial court receives evidence of parental fitness to exercise care, custody, and control of a child. Evans v. Lungrin, 97-0541, pp. 12-13 (La.2/6/98), 708 So.2d 731, 738.
When the original custody decree is stipulated judgment, a party seeking modification of custody must prove that there has been a material change in circumstances since the original decree, and *357 that the proposed modification is in the best interest of the child. Evans, 708 So.2d at 738. A party seeking to modify a considered decree of permanent custody must satisfy the additional jurisprudential requirement of proving that continuation of the present custody is "so deleterious to the child as to justify a modification of the custody decree," or of proving by "clear and convincing evidence that the harm likely to be caused by the change of environment is substantially outweighed by its advantages to the child." Evans, 708 So.2d at 738, citing, Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La.1986). With these rules in mind, the paramount consideration in any determination of child custody is the consideration of the best interest of the child. Evans, 708 So.2d at 738. LSA-C.C. art. 131.
Mrs. Shaffer argues that the November 25, 1996 judgment is a considered decree, thus placing the heavier burden annunciated in Bergeron on Mr. Shaffer's attempt to modify custody. We disagree. In reviewing the record, we find that while the November 25 judgment almost exclusively addresses custody arrangements for Darryl, Jr., Kristen's custody is addressed as, "[t]he domiciliary and visitation arrangements for Kristen Nicole Shaffer shall remain as previously fixed." The custody arrangement for Kristen was previously fixed in a December 5, 1995 stipulated judgment, which awarded joint custody with Mrs. Shaffer named as domiciliary parent subject to Mr. Shaffer's specified visitation.
Although the November 25 judgment is a considered decree as to Darryl, Jr., Kristen's custody was not a contested matter at that time. Further, the record does not reflect the trial court received any evidence of either party's parental fitness concerning Kristen. Accordingly, in order to modify the prior custody award, Mr. Shaffer was required to prove a material change in circumstances since the original custody award and that modification is in the best interest of the child.[2]Evans, 708 So.2d at 738.
Every custody case must be considered within its particular set of facts. A trial court's determination of custody is entitled to great weight and will be overturned on appeal only when there is a clear abuse of discretion. Scott v. Scott, 95-0816, p. 4 (La.App. 1st Cir.12/15/95), 665 So.2d 760, 763, writ denied, 96-0181 (La.2/2/96), 666 So.2d 1106.

CHANGE IN CIRCUMSTANCES
The original custody decree providing that Kristen would spend the first week of every month with her father in Baton Rouge and the remaining three weeks with her mother in Lafayette is no longer, a practical schedule given the fact that Kristen has reached school age. At least one court has ruled that the fact that a child reaches school age constitutes a material change in circumstances sufficient to consider the modification of custody. Long v. Dossett, 98-1160, p. 4 (La.App. 3rd Cir.4/28/99), 732 So.2d 773, 776, writ denied, 99-1377 (La.6/4/99), 745 So.2d 13. Under the particular facts of this case, we *358 agree that once Kristen reached school age, her need to attend one school in one location requires a modification of the original custody decree.
While noting that Kristen has lived mostly in her mother's home during the past three years, the trial court in its written reasons for judgment emphasized that she has also spent extensive time in her father's home with Mr. Shaffer and Darryl, Jr., her full-blooded sibling. The trial court also noted that Kristen and Darryl, Jr. have lived together the first full week of each month at their father's home, and visitation has been arranged so that the siblings could live together on weekends, holidays, and during the summer.
Kristen's enrollment in school also causes a change in circumstances affecting her relationship with her only full-blooded sibling. Mr. Shaffer argued that it is in Kristen's best interest to live with her full-blooded sibling in the same household. The trial court stated that evidence presented by both sides revealed that Kristen and Darryl, Jr. have a very close and loving relationship and that there are a limited number of years left for this bond to strengthen. The trial court reasoned that their relationship could develop even stronger if they lived together all of the time as a family.
The separation of children of a family, though sometimes necessary, is a custodial disposition that courts seek to avoid. Howze v. Howze, 99-0852, p. 3 (La.5/26/99), 735 So.2d 619, 621. Normally, the welfare of children is best served by leaving them together, so they can have the full benefit of companionship and affection. When feasible, a court should shape its orders to maintain family solidarity. Tiffee v. Tiffee, 254 La. 381, 387-88, 223 So.2d 840, 843 (1969). We find that Mr. Shaffer proved a change in circumstances materially affecting Kristen's welfare by showing that she had reached school age, that the exiting custody/visitation schedule was thereby made unworkable and that her relationship with her brother would be affected.[3]

BEST INTEREST OF THE CHILD
In determining whether Mr. Shaffer proved that it is in Kristen's best interest to modify custody, the trial court found the parents to be equal on many factors listed in LSA-C.C. art. 134, which a court must consider to determine the best interest of the child. The court found both parents to be loving, capable, and caring; to have the same capacity and disposition to give Kristen love, affection, and spiritual guidance and to continue her education and rearing; to be capable and to provide her with food, clothing, shelter, medical and material needs; to be morally fit; to have approximately the same physical and mental health; and to have shared responsibility for her care and rearing.
The trial court found that there was a difference between the parties concerning two factors listed in LSA-C.C. art. 134:
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
* * *
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
The trial court made findings of fact that Mrs. Shaffer did not exhibit the same willingness *359 as Mr. Shaffer to encourage a close and continuing relationship between Kristen and her father. The trial court noted from Mrs. Shaffer's testimony that she did not allow Kristen to go with Mr. Shaffer to Mississippi to watch Darryl, Jr. play baseball, because it was not "his week." She could not recall any instances in which she had allowed extra visitation. The trial court also cited Mrs. Shaffer's testimony that she thought a modification in custody would be "detrimental not only to her [Kristen] but to me to pull us apart now"; whereas, the court noted that Mr. Shaffer's testimony showed that he wanted to share equal custody of both children if she moved to Baton Rouge.
Philip Duncan, Jr., district claims manager for Louisiana Farm Bureau Insurance Company, testified that Mrs. Shaffer was offered the same job with the same pay in Baton Rouge, she accepted it, and then later refused the offer. Mrs. Shaffer testified that she did not believe that she was offered the job and that she refused it because it would require longer hours away from her children. The trial court stated in the record that it did not believe Mrs. Shaffer's testimony concerning the job offer and that if Mrs. Shaffer had been willing to relocate to Baton Rouge, then family solidarity would have been furthered. When findings of fact are based upon evaluations of witness credibility, the manifest error/clearly wrong standard demands great deference to the trial court. Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989).
The record reflects that Mr. Shaffer is self-employed in a family business near the family home and has extended family either living on the same street or nearby, including the children's aunt, uncle, and grandmother. His testimony further shows that he is concerned about continuing the close relationship between Kristen and Darryl, Jr. In contrast, the record shows that Mrs. Shaffer has no family in Lafayette and now has an infant from another relationship who will require her attention. Accordingly, we find no clear abuse of discretion with the trial court's determination that Mr. Shaffer has satisfied his burden of proving both a change in circumstances materially affecting the child's welfare and that Kristen's best interest is served by modifying joint custody to designate him as the domiciliary parent.

WITNESS TESTIMONY
Concerning Debra Shaffer's remaining assignments of error, the record reflects that her expert's affidavit was attached to her answer and reconventional demand filed on September 17, 1999. The trial was held seven days later on September 24, 1999. The record further reflects that the trial court's case management schedule required that witnesses for trial be listed by May 24, 1999. Mrs. Shaffer had ample time to furnish information concerning her expert. In addition, the expert's affidavit was in hypothetical form and he did not personally interview either party or Kristen. A trial court is granted broad discretion in conducting a trial and in determining whether to receive or refuse testimony. The trial court is not bound to follow the recommendations of an expert witness. Day v. Day, 97-1994, p. 6 (La.App. 1st Cir.4/8/98), 711 So.2d 793, 797. Further, the trial court acts as the child's fiduciary in a custody case and must actively pursue that course of conduct which will be of the greatest benefit to the child. Turner v. Turner, 455 So.2d 1374, 1379 (La.1984). We find that the trial court's questioning of the witnesses was *360 done to determine the best interest of the child under LSA-C.C. art. 134. Accordingly, we find Debra Shaffer's remaining assignments of error to be without merit.

CONCLUSION
For the foregoing reasons, we find that there was no abuse of discretion in the trial court's judgment modifying joint custody of the minor child, Kristen Nicole Shaffer, to designate Darryl Lynn Shaffer, Sr. as Kristen's domiciliary parent with specified visitation for Debra Sharp Shaffer during the school year, holidays, and summer of each year. The decision of the trial court is affirmed with all costs of the appeal assessed to Debra Sharp Shaffer.
AFFIRMED.
WEIMER, J., concurs with written reasons.
H. WARD FONTENOT, J. Pro Tem., dissents and will assign written reasons.
WEIMER, J., concurring.
I concur in the result and write to make the following observations because I note a lack of precision in the language of cases involving an attempt to alter custody following a stipulated judgment. See footnote 2 of the opinion.
In Evans v. Lungrin, 97-0541, p. 13 (La.2/6/98), 708 So.2d 731, the supreme court held that "where the original custody decree is a stipulated judgment, the party seeking modification must prove (1) that there has been a material change of circumstances since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child." (Underscoring added.)
Evans cited Hensgens v. Hensgens, 94-1200 (La.App. 3 Cir. 3/15/95), 653 So.2d 48, 52, writ denied, 95-1488 (9/22/95), 660 So.2d 478, which in one portion of the opinion recites precisely that which is quoted above. However, in the next paragraph, the Hensgens court states, "it was incumbent upon [the parent seeking to change custody] to prove that a change of circumstances materially affecting the welfare of [the child] had occurred since the original decree and that the modification... proposed was in the best interest of the [child]." (Emphasis added.)
In an earlier portion of the opinion, the court in Hensgens cited Mosely v. Mosely, 499 So.2d 106, 108 (La.App. 1 Cir.1986), which held there must be allegations and proof of "a change in circumstances materially affecting the welfare of the child." The court went on to hold that proof of the mother's remarriage was insufficient to establish an affect on the welfare of the children. Thus, the Mosely case focused not on a "material change in circumstances," but rather on "a change in circumstances materially affecting the welfare of the child."[1]
Although the difference in language may be slight and arguably involves semantics, the focus of the latter quoted statement is on the effect the change in circumstances has on the child. It is the child upon whom we must focus. Life changes may occur, but if the changes do not have an effect on the welfare of the child, then no change in custody is justified.
In Evans, the Supreme Court held relocation to Washington from Louisiana, which resulted in making the original custody decree unworkable, was a material change in circumstances. Although the *361 Supreme Court did not specifically use the language "a change in circumstances materially affecting the welfare of the children," an interstate move would affect the welfare of the child from the standpoint that the distance deprives the child of the opportunity of being in the physical company of both parents on a regular and consistent basis.
In this matter, there was a change in circumstances which materially affected the welfare of Kristen. I do not believe beginning school, in and of itself, is a "change in circumstances materially affecting the welfare of the child" as indicated by the trial court in its reasons for judgment.[2] However, in this matter, Kristen's welfare is affected because the custody/visitation plan in which the father had the child one week per month became unworkable with Kristen beginning school. Thus, her welfare is affected.
In determining what standard must be met to enable a parent to request a change in custody following a consent decree or stipulated judgment, we must use caution in finding an appropriate balance. If the bar is raised too high, there will be no willingness to agree[3] because a subsequent change will be too difficult. On the other hand, if the bar is too low, there will be constant custody conflicts to the detriment of the child. Because the paramount consideration in any determination of child custody is the best interest of the child,[4] the party seeking a modification following a stipulated judgment of custody should prove: 1) a change in circumstances materially affecting the welfare of the child has occurred since the most recent decree and 2) the modification proposed is in the best interest of the child.
FONTENOT, J., dissenting.
I have no disagreement with the conclusion in the majority opinion regarding the burden or proof in a situation where a party is seeking modification of a prior stipulated judgment.[1] The reason for this burden of proof is self-evident. It is to foster stability in the child's familial environment.[2] But, the majority opinion herein has approved an application of this rule which results in the removal of a child *362 from the custody of the parent who has been the domiciliary parent since 1995[3] and with whom the child has lived since birth. The difficulty I have with the outcome is that the "material change of circumstances" which empowered the trial court to modify the existing custody order was the simple fact that the child had reached school age. If this single event can trigger a "best interest" review of a stipulated judgment, then we have introduced a serious destabilizing factor in the formulae by which we operate.
It is my respectful opinion that the error of the trial court and of the majority can be traced to reliance upon certain cases as authority which, in fact, do not support the proposition for which they are offered. Mentioned by both courts was Long v. Dossett, 98-1160 (La.App. 3 Cir. 4/28/99), 732 So.2d 773, writ denied, 99-1377 (La.6/4/99), 745 So.2d 13. In that case, the situation under review was a split custody arrangement in which the custody of a preschool child was shared on a six-month, alternating basis. Because the parents lived in different school districts, the split custody plan was no longer feasible when the child reached school age. Another case cited in appellee's brief is Chandler v. Grass, 600 So.2d 852 (La.App. 3 Cir.1992) and the considerations were identical to those in Long. In Chandler, the court was reviewing an arrangement with a rotating three-month schedule. Again, it was unavoidable that the prior plan could not be continued after school age was attained.
Those cases differ from the one presently before us in that the Shaffers did not have a shared custody plan. Although Mr. Shaffer had generous visitation rights, Mrs. Shaffer was the domiciliary parent and had been since the child was one-year old.
Throughout the course of raising a child, certain plateaus will be reached that will require adjustments in the family's schedule of activities. The beginning of school is a major milestone, but it is one encountered by almost all families, and the necessary adjustments are usually made with minimal disruption. A case which dealt with a factual situation almost identical to the present case is Shaw v. Shaw, 30,613 (La.App. 2 Cir. 6/24/98), 714 So.2d 906. In that case, the parties had operated under a loosely worded document entitled, "Joint Custody Plan", which did not designate a domiciliary parent. However, in reviewing the evidence, the court concluded that the child, Savannah, had resided primarily with the mother, making that case close to the factual situation we find in the case under review. In discussing whether the father, Neil, met the burden of showing the requisite change of circumstances, the court said:
Although Savannah's commencement of kindergarten and her longer school hours may now affect the amount of Neil's time with her each Thursday, we do not view this change as material. Longer school hours impact the amount of actual physical time that both parents can enjoy with the child.
Shaw, 714 So.2d 906.
In this case, as in Shaw, the development in the child's life, that of kindergarten attendance, would impact both parents and would affect their previous habits and schedules. But it is a foreseeable and normal development expected with any normal child. While visitation may be judicially modified to accommodate the needs of a growing child, I am uncomfortable with a rule that could lead to the *363 review of the domiciliary status at each stage of the child's journey to adulthood.
The cases of Long v. Dossett, supra, and Chandler v. Grass, supra, were correct in their conclusions because they involved custody arrangements which would have produced an irreconcilable conflict with school attendance. But, I have found no case in which a mere reduction in visitation necessitated by school obligations was considered a material change for purposes of empowering a court to discard a prior custody arrangement in the pursuit of the best interest of the child. One bothersome thought about the majority's opinion herein is that the case may be read to establish a rule to the effect that the arrival of a child at school age will ipso facto provide the basis for judicial intervention in a stipulated judgment of custody. The case of Hensgens v. Hensgens, 94-1200 (La.App. 3 Cir. 3/15/95), 653 So.2d.48, writ denied, 95-1488 (La.9/22/95), 660 So.2d 478, cited by the majority, cautions against such a presumption with this language:
Accordingly, we find that an intrastate move is not "per se" a material change of circumstances such that we may presume that it will materially affect the children's welfare without further evidence.
Hensgens, 653 So.2d 48.
The material change being considered in Hensgens was a move by the custodial parent to a distant state. Obviously, an out-of-state move by a domiciliary parent carries a greater potential for material changes than whatever adjustments are associated with the constraints of school attendance. If the move of a domiciliary parent across a state line is not per se a material change, then a fortiori, a noncustodial party in the circumstances of this case should have been required to present "further evidence" as indicated by the quoted language above. It is my opinion that the appellee herein was incorrectly relieved of that burden. I respectfully dissent.
NOTES
[1] Honorable H. Ward Fontenot, 38th Judicial District Court, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] We note that the first prong of this test has sometimes been expressed as a "change in circumstances materially affecting the welfare of the child." See Mosely v. Mosely, 499 So.2d 106, 108 (La.App. 1st Cir.1986), writ denied, 505 So.2d 1138 (La.1987). However, we find such a difference in the language of the test used to determine whether custody should be modified does not impose a different standard on the party seeking modification. In our view, whether the test is referred to as "a material change in circumstances" or "a change in circumstances materially affecting the welfare of the child," the trial court is faced with the same determination.
[3] Mrs. Shaffer has an infant from another relationship. We realize that regardless of whether Kristen is placed with her mother or father, unfortunately, she will be separated from a sibling.
[1] For use of this later language see also Perkins v. Perkins, 99-1130, p. 5 (La.App. 1 Cir. 1999), 747 So.2d 785, 788, writ granted, XXXX-XXXX (La.2/16/00), 754 So.2d 950; Smith v. Smith, 615 So.2d 926, 931(La.App. 1 Cir.), writ denied, 617 So.2d 916 (1993); and Rogers v. Rogers, 577 So.2d 761 (La.App. 1 Cir.1991).
[2] The trial court cited Long v. Dossett, 98-1160 (La.App. 3 Cir. 4/28/99), 732 So.2d 773, writ denied, 99-1377 (6/4/99), 745 So.2d 13, in holding that entering school was a substantial change in circumstances. However, in Long the parents had an arrangement wherein the custody of the pre-school child was shared on a six-month basis, and the parents lived in two different school districts. Obviously, the arrangement needed to be revised when the child began attending school. Furthermore, that custody arrangement had a provision which anticipated the need to alter the custody agreement when the child reached school age. Language in the custody order which granted equal joint custody to the parents stated this arrangement would continue "until the minor child begins school at which time the parties shall submit a new implementation plan in writing or submit the issues to the Court."
[3] Parents should strive to agree on the custody and visitation arrangement that is in the best interest of their children. The court should be the last resort to decide these extremely personal and difficult matters.
[4] See LSA-C.C. art. 131.
[1] "[W]here the original custody decree is a stipulated judgment, the party seeking modification must prove 1) that there has been a material change of circumstances since the original custody decree was entered, and 2) that the proposed modification is in the best interest of the child." Evans v. Lungren, 97-0541 (La.2/6/98), 708 So.2d 731, 738.
[2] "The reasons for the rule are that it is desirable that there be an end of litigation and undesirable to change the child's established mode of living except for imperative reasons." Bergeron v. Bergeron, 492 So.2d 1193, 1195 (La.1986).
[3] The judgment making Mrs. Shaffer the domiciliary parent was signed on December 5, 1995. That status was maintained in a subsequent judgment dated November 25, 1996.