HANS J. LILJEBERG, JUDGE
| tin this child custody proceeding, the father appeals the trial court’s judgment granting the mother’s Rule to Modify Child Custody and awarding the parties joint custody, with the mother named as the domiciliary parent. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
The parties, Kelly Boesch (“Kelly”) and Deborah Boesch Corb (“Deborah”), were married on February 26, 2000. During their marriage, the parties had two children: Christian, born January 28, 2003; and Jaden, born April 1, 2005. Kelly filed for divorce in January of 2008, and a judgment of divorce was rendered on March 20, 2009.
After a custody evaluation was performed, the parties entered into a consent *939 judgment on December 16, 2008, which provided that the parties would have joint custody of the children, with both parents designated as co-domiciliary parents. Under their agreement, the children would live with the father, Kelly, and the mother, Deborah, would have visitation on her days off from work. Deborah was on active duty with the United States Air Force at that time.
On November 30, 2009, the parties entered into a second consent judgment, which provided that upon Deborah’s release from the military, the parties would continue to have joint custody of the children, with both designated as co-domiciliary parents, but with the parties having 50/50 shared custody on a week-to-week basis.
On May 13, 2013, Deborah filed a Rule to Modify Child Custody, asserting that there had been a material change in circumstances to justify a custody modification, and that the shared physical custody schedule was no longer in the best interest of the children. In her pleading, Deborah requested that she be ^designated as the primary domiciliary parent and that the children reside with her, subject to visitation with Kelly every other weekend.
Deborah set forth several assertions in support of her claim that a material change in circumstances had occurred. She noted that she was no longer in the military, had remarried, and was a stay-at-home mom, with much more time to care for the children, assist with their medical needs and hygiene, and provide a balanced diet. She claimed that she provided the children with a stable environment, whereas Kelly allowed the children to live in chaos and watch excessive television, which resulted in their failure to complete homework and caused stress and confusion for the children. Deborah further asserted that the parties’ son, Christian, had started exhibiting behavioral problems at school, including bullying, which she believed was correlated with Kelly’s “lack of parenting skills and poor example.” She further raised issues pertaining to the children’s hygiene during their time with Kelly. Finally, Deborah set forth several reasons why Kelly “makes it impossible” to co-parent the minor children, including that Kelly is hostile and bitter over then-divorce and her remarriage, that Kelly refuses to administer Christian’s allergy medicine, and that the parties cannot agree on a primary physician for the children, as well as other issues.
On May 30, 2013, Kelly filed an Opposition to Deborah’s Rule to Modify Child Custody, arguing that no material change in circumstances had occurred since the November 30, 2009 consent judgment. He further asserted that he and the children are “very bonded” and that he provides a stable and loving home for them. Kelly also denied failing to appropriately attend to the children’s hygiene and homework, and he denied allowing them to watch excessive amounts of television. Finally, in his opposition, Kelly asserted that Deborah wants him to medicate Christian when he is not sick, Deborah’s husband threatens the children |awith corporal punishment, and Deborah does not foster a relationship between him and the children.
On June 7, 2013, the parties agreed to have Gail Pesses, M.S.W., L.C.S.W., perform an updated custody evaluation.[1] On December 9, 2013, Ms. Pesses completed her updated evaluation, recommending that the parties should have joint custody, with Deborah designated as the domiciliary parent. She recommended that the children live primarily with Deborah and *940 have visitation with Kelly every other weekend from Thursday after school until Sunday night, and on Tuesdays after school when he has not had visitation the weekend before. Ms. Pesses made several additional recommendations pertaining to medical treatment, a holiday schedule, and other issues.
On January 31, 2014, the domestic hearing officer recommended that the court adopt Ms. Pesses’ recommendations until there was a ruling on Deborah’s Rule to Modify Custody. This became an interim order of the court.
On June 24, 2014, Deborah filed a Motion for Updated Child Custody Evaluation, which was granted by the trial court. Thereafter, on March 26, 2015, Deborah filed a Motion to Set Custody Trial and Amended Rule, requesting sole custody of the children for the reasons previously asserted and also alleging:
1) Kelly was still refusing to medicate Christian, which resulted in Christian having to go to Children’s Hospital for exacerbation of his allergy symptoms.
2) Kelly discussed parenting conflicts with the children’s pediatrician in front of Christian. Kelly taped his conversation with the pediatrician, and when the doctor found out she had been secretly recorded, she refused to treat the children any longer.
3) Deborah has attempted to use the parenting coordinator to select a new pediatrician, but Kelly refuses.
4) Christian has been having behavioral problems at school, and he was reported to the state as a bully.
|/Trial on the change of custody matter was held on July 28 and 29, 2015, and October 1 and 21, 2015. At trial, Gail Pess-es, the court-appointed custody evaluator, was accepted as an expert in social work and child custody evaluations. Ms. Pesses stated that Deborah and Kelly have “very little effective non-confrontational communication.” She testified regarding different areas of conflict, including arguments about sharing school information, the allergy medicine dispute, the children’s relationship with and name for Deborah’s husband, and others. Ms. Pesses testified that Kelly thinks Deborah and her husband, John Corb, want Kelly out of the children’s lives, but Ms. Pesses does not think that is true. She testified that both children indicated that their parents’ households are very different. Ms. Pesses testified that both children expressed things they liked about both parents and things they wished each parent would do better.
Ms. Pesses testified that she believes both parents have contributed to the parenting conflict. She believes that Kelly goes to extremes when he is angry by speaking to the children about parenting conflicts, the court proceedings, and what he thinks about Deborah’s requests, which in turn causes more conflict. Ms. Pesses indicated that the children are put in the middle which pressures them and can cause them to feel less secure and worry. She testified that this can contribute to Christian’s acting out at school, though many factors could be involved.
Ms. Pesses opined that the present custody situation was “miserable to everybody” and that they were “stuck” and unable to move forward with the children’s needs. She stated that Kelly puts his needs before the children’s and he is unable to control his anger and jealousy, which prevents rational solutions to co-parenting dilemmas and serves as a dangerous model for the children, especially Christian. While Ms. Pesses testified that neither party wants to hurt the children, |5she believes that joint custody with Deborah *941 as the domiciliary parent is in the best interest of the children.
Lynette Duhe, who was accepted as an expert in psychology and counseling, testified that she provided counseling to Christian in 2012 and again in 2014. She testified that she did not think the shared custody arrangement was negatively impacting Christian and that limiting time with Kelly could negatively impact Christian. However, she also noted that she had to speak with the parties about the amount of tension between them and how it was affecting Christian. Ms. Duhe believes that Kelly minimizes Christian’s behavioral problems, and she thinks Deborah needs to revise her fears about Christian being disturbed or it could become a self-fulfilling prophecy.
Alicia Pellegrin, an expert in psychology and child custody evaluations, performed psychological evaluations of the children. Dr. Pellegrin testified that Deborah and Kelly are polarized in how they view the children, the situation, and each other’s parenting skills. She testified that Jaden is well-adjusted and “happy go lucky.” However, she found Christian to be socially and emotionally immature, with anger issues and without good coping skills. She believes Christian does not know how to express his anger appropriately, resulting in the trouble he has had at school. However, she stated that it is hard to know the severity of his issues, because the parents provide completely different narratives. Deborah thinks Christian has serious problems, whereas Kelly thinks he is emotional and high energy, but within normal limits. Dr. Pellegrin recommended therapy for Christian and that Kelly and Deborah work on their relationship, stating that she believes “at least some of what was going on with Christian and contributing to his acting out was the animosity between his parents and the very different ways that he is viewed by mom and by dad.”
IfiDr. Alan Klein, an expert in psychology, testified that he conducted a psychological evaluation of Kelly. He believes that Kelly has anger management problems and a problem with figures of authority. He did not find anything that he believes would compromise Kelly’s ability to parent when the children are in his care, but he stated that it is another issue when dealing with Deborah. Dr. Klein testified that the parties have a vitriolic and contentious co-parenting relationship, and he believes the dynamics of their relationship affect their ability to co-parent.
Daniel Perez, a teacher and coach at the children’s school, testified regarding Christian’s behavior problems. He believes Christian’s behavior is not intended to be mean or aggressive; rather, he thinks Christian is acting out for attention and because he wants to be socially accepted. Mr. Perez believes that both parents have shown care, advocacy, and support for the education of the children.
Deborah Corb testified about issues involving co-parenting with Kelly, as well as issues with Christian’s medication and school behavior. She testified about an incident at the children’s school during which Kelly referred to her as a “psycho” in front of Christian and other people. Deborah also referred to incidents in which the parties have argued over the children’s shoes and Kelly referred to her as a “liar” in front of the children. Deborah testified that Kelly involves the children in the parties’ issues and he has told them that Deborah is being unfair. She stated that there has been an ongoing problem with telephone access, and she testified regarding emails and other communications between the parties about telephone issues. Deborah stated that she wanted a phone schedule so that Kelly could speak *942 to the children directly instead of speaking to her, but Kelly would not agree to a phone schedule and would often put her on speakerphone when she called the children. Deborah also testified regarding conflicts with Christmas visitation. She stated that Kelly often puts the children in the middle and she is “constantly addressing it through emails with Kelly.”
17Peborah also testified that Christian’s medication has been a big source of contention between the parties. She stated that the children’s former pediatrician, Dr. Reed, diagnosed Christian with allergic rhinitis. Christian’s medical records were admitted into evidence, and Deborah testified regarding Christian’s medical issues, which are primarily associated with his allergies. Deborah stated that Dr. Reed prescribed two medications for Christian, to be taken daily. Dr. Reed indicated that they could “see about weaning him off the medication” if he did not have symptoms for at least three weeks. Deborah indicated that Kelly does not give Christian his medication daily because he does not believe Christian needs medicine when he does not have symptoms.
Deborah testified that Dr. Reed indicated that she would no longer be the children’s pediatrician as of August 15, 2014, after Deborah informed her that Kelly had recorded a conversation between Dr. Reed and Kelly. She stated that at the time of her testimony, July 29, 2015, she and Kelly were still unable to agree on a pediatrician for the children and she has had to go to Children’s Hospital for Christian’s medication and any issues the children have had. Deborah testified that she has gone to the children’s school to give Christian his medication during the weeks they are in Kelly’s custody, in order to make sure that Christian is regularly medicated. She testified that Dr. Reed indicated that there are risks of developing asthma if allergic rhinitis symptoms are not controlled. Deborah testified about difficulties in the parties’ communication about Christian’s medication and on one occasion, Christian was “double-medicated” or given his medication by both parties on the same day.
Deborah also testified about Jaden’s issues with pinworms, which she claims were caused by Kelly not requiring the children to bathe regularly when in his custody. Jaden’s medical records were also admitted into evidence.
|sFinally, Deborah testified that while the children have good grades, she has had to give additional effort during her custody time to make up for their lack of preparation during Kelly’s custody time. Deborah also testified regarding the numerous behavior reports Christian has received at school since 2010. She testified that she gives structured discipline to hopefully prevent inappropriate behavior, but Kelly has not provided appropriate discipline in response to Christian’s behavior reports.
Kelly Boesch testified that he and Deborah had a good co-parenting relationship before Deborah got remarried. He stated that after Deborah’s remarriage, the children would tell him negative things that were said about him by Deborah and John, including that Deborah had to divorce him because Kelly did not believe in God. Kelly testified that the children stated that Deborah and John told them to call John “dad” and gave the children Bibles from “mom and dad.” Kelly believes that Deborah and John were trying to turn the children against him. Kelly also testified that the children told him John threatened to give Christian “a really bad spanking.” According to Kelly, Deborah would not answer the phone when he called to discuss these issues, and he admitted leaving “not-too-nice” messages for her.
Kelly further testified that before Deborah remarried, whatever the children were *943 wearing when they went to the other’s custody, they would wear when they returned. However, Kelly asserted that after Deborah remarried, she repeatedly refused to return the shoes he bought for Jaden, and Deborah would send Jaden in “disgusting” shoes for boys. He stated that he previously had phone contact with the children almost every day, but after Deborah’s remarriage, she tried to restrict him to a call schedule. Kelly also testified regarding a family reunion that he wanted the children to attend, but Deborah would only agree for her and John to Rbring the children to Kelly’s family reunion for an hour, with Deborah and John present.
Kelly testified that Christian’s medication became an issue after Deborah’s remarriage. He testified that at some point after speaking with Dr. Reed, he started medicating Christian daily, but Deborah would get the prescription and only give him two phis for the weekend because she went to school every day to give him his medication. Kelly did not agree with sending the medication in Christian’s backpack, because it was dangerous and against school policy. He also testified that he gave Christian his medication one day and, after he took it, Christian told him he had already gotten his medication from his mother that day. In Kelly’s opinion, the medication does not work for Christian, and he has allergy symptoms during certain times of the year whether he is on medication or not. Kelly testified that he has begged Deborah to pick another doctor with him but she had refused.
Kelly also testified that Christian has been in counseling since he was little because Deborah always thinks something is wrong with him. He testified that after Dr. Pellegrin recommended therapy for Christian, Deborah would not agree to any of the therapists he recommended. Kelly also testified regarding the children’s academic performances and issues he has had receiving report cards and other information. Finally, Kelly testified that he believes the children like the shared custody arrangement and that it is in the best interest of the children to continue this arrangement.
On October 28, 2015, in open court, the trial judge rendered a judgment granting the Rule to Modify Custody and ordering joint custody, with Deborah designated as the domiciliary parent. The judge ordered that the children would primarily reside with Deborah and that Kelly would have physical custody of the children on alternating weekends from Friday after school until 6:00 p.m. on Sunday evening. Kelly would also have the children every Wednesday until 7:00 hnP.m. The holiday schedule would remain unchanged and each party would have two weeks of uninterrupted vacation with the children in the summer. The judgment further provided that Deborah would select the children’s medical and dental providers and inform Kelly of the same. The parties would follow the recommendations of the children’s doctors regarding administration of medicine or treatments, and Christian would continue in therapy. The judgment ordered that Kelly would have telephone contact with the children two days per week on the days he does not exercise physical custody. The lengthy judgment provided other various orders as well.
Kelly filed a Motion for New Trial, which was denied by the trial court on March 15, 2016. Kelly appeals.
LAW AND DISCUSSION
On appeal, Kelly argues that the trial court erred in modifying the child custody order from 2009, because there was no material change in circumstances, which is required to support a modification of custody. He contends that the issues in this case do not rise to the level of change needed for a change in custody. Kelly ar *944 gues that while the parties have engaged in instances of “petty behavior,” the testimony and evidence did not show that the 7/7 shared custody arrangement was having a negative impact on the children.
Deborah responds that the trial court did not err in finding that there was a material change in circumstances affecting the welfare of the children. She notes that the trial court found that Kelly sees his rights before his children’s and that his assertion of rights negatively impacts the children. She claims that Kelly’s actions, particularly refusing to medicate Christian, show that he cannot be trusted to act in the children’s best interests and not be ruled by his emotions as they relate to Deborah. Deborah claims that taking the evidence as a whole, the trial court Inproperly found a material change in circumstances and modified custody in accordance with the children’s best interests.
The primary consideration in a determination of child custody is the best interest of the child. La. C.C. art. 131; McCaffery v. McCaffery, 13-692 (La.App. 5 Cir. 4/9/14), 140 So.3d 105, 115, writ denied, 14-981 (La. 6/13/14), 141 So.3d 273. The best interest of the child rule applies in actions to change custody as well as those to initially set it. Id.; Gray v. Gray, 11-548 (La. 7/1/11), 65 So.3d 1247, 1258.
For a parent seeking a change in a custody arrangement, the burden of proof differs depending on whether the prior custody award was made by a considered decree or a stipulated decree. Silbernagel v. Silbernagel, 10-267 (La.App. 5 Cir. 5/10/11), 65 So.3d 724, 728. A stipulated custody decree is one in which “the parties consent to a custodial arrangement, and no evidence of parental fitness is taken.” Evans v. Lungrin, 97-0541 (La. 2/6/98), 708 So.2d 731, 738. A considered decree, on the other hand, is “an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children.” Id.
In the present case, the prior custody decree from 2009 was a consent judgment and, thus, it was a stipulated custody decree. The party seeking to modify a stipulated custody decree bears the burden of proving by a preponderance of the evidence that: 1) there has been a material change in circumstances since the prior custody decree was entered; and 2) the proposed modification is in the best interest of the children. Evans, 708 So.2d at 738; Silbernagel, 65 So.3d at 728.
Every child custody case must be viewed within its own peculiar set of facts and circumstances. McCaffery, 140 So.3d at 116; Connelly v. Connelly, 94-527 (La.App. 1 Cir. 10/7/94), 644 So.2d 789. The trial judge is in the best position to ascertain the best interest of the child within each unique set of circumstances, McCaffery, 140 So.3d at 116. However, the best interest of the child is not the first consideration when one seeks a modification of custody. Cedotal v. Cedotal, 05-1524 (La.App. 1 Cir. 11/4/05), 927 So.2d 433, 437. A trial court should first ascertain whether a change in circumstances materially affecting the welfare of the child has occurred. Id. Although life changes may occur, a change in custody is not justified if the changes do not have an effect on the welfare of the child. Mizell v. Stone, 15-244 (La.App. 3 Cir. 12/9/15), 181 So.3d 842, 851.
In the present case, the trial court did not make a finding regarding a material change in circumstances and thus, pre-termitted the first prong of the two-pronged material change/best interest *945 test.[2] Thus, we must consider the question of a material change in circumstances de novo based on our review of the record. See Evans, 708 So.2d at 735; and Bonnette v. Bonnette, 15-239 (La.App. 4 Cir. 2/17/16), 185 So.3d 321, 330, writ denied, 16-663 (La. 5/20/16), 191 So.3d 1072.
In Bonnette, 185 So.3d at 330, the Fourth Circuit noted that the courts of this state have found a material change in circumstances under a variety of circumstances, such as communication problems between the parties,[3] the interstate move of a parent,[4] the child’s reaching school age,[5] the child’s stated desire to live with a particular parent,[6] as well as a parent’s remarriage and corresponding improved living situation.[7] In Bonnette, 185 So.3d at 330, the Court found that a material change in circumstances occurred as a result of the father’s remarriage and establishment of a permanent household, and the change of dynamics of the parents’ relationship following the prior stipulated custody decree.
haln Harvey v. Harvey, 10-1338 (La.App. 3 Cir. 3/9/11), 56 So.3d 467 (unpublished), writ denied, 11-719 (La. 4/29/11), 62 So.3d 117, the mother challenged the trial court’s judgment which altered the custody arrangement between the parties. She argued that the trial court’s stated reasons for finding a material change in circumstances—that the parties do not communicate well—was neither a change in circumstances nor a sufficient change to alter the custody arrangement. The Third Circuit affirmed the trial court’s finding of a material change in circumstances, noting that the parties’ filing of several contempt orders in two years showed a pattern of communication problems and other issues showed.an escalation of the problems between the parties.
In the present case, based on our de novo review, we find that a material change in circumstances has occurred since the prior 2009 stipulated custody decree, namely Deborah’s remarriage and the parties’ subsequent decline in communication and effective co-parenting.
On November 30, 2009, the prior consent judgment on custody was rendered. In May of 2012, Deborah remarried. Although Kelly contends that there has been no material change in circumstances since the 2009 consent judgment, he testified at trial that he and Deborah co-parented well before Deborah remarried and then, “everything changed.” Although there were some issues before, the record reflects that the parties have been unable to effectively communicate since Deborah’s remarriage. Christian’s medication became a particularly strong point of conflict, and his parents’ lack of communication led to him receiving twice the recommended dose of medication on one occasion. Further, since Deborah’s remarriage, there have been conflicts regarding telephone contact, *946 shoes, Christmas visitation, and several other issues. The children have clearly been put in the middle of their parents’ conflicts. The parties could not even agree on a | upediatrician for the children for an extended period of time, resulting in all medical concerns, including medication requests, being presented to Children’s Hospital.
Dr. Klein testified that Kelly has anger issues and that the dynamics of his relationship with Deborah affect his ability to co-parent. Gail Pesses testified that Kelly and Deborah have very little effective communication. She believes that Kelly thinks he can do whatever he wants when it comes to the children, but the children’s needs should come before his needs. Ms. Pesses further opined that Kelly’s inability to control his anger and jealousy prevents rational solutions to co-parenting dilemmas and serves as a dangerous role model for the children, especially Christian.
Of particular concern is Christian’s behavior at school. The record reflects that Christian has received numerous behavior reports for incidents involving various behavior, including kicking, grabbing, teasing, blocking, pushing, punching, and scratching other children. The record shows that the parties have inconsistent approaches to discipline, prevention of further inappropriate conduct, and counseling. Further, although the children have received mostly good grades, there was testimony about issues regarding the children’s homework and test preparation, and their teachers have noted inconsistent effort and performance at times.
Because the record shows that there has been a material change in circumstances since the 2009 consent judgment, the next question to be addressed in a change of custody matter is whether a modification of custody is in the best interest of the children. Kelly did not cite as error the trial court’s finding that a change in custody was in the best interest of the children. Rather, he focused on his claim that there has been no change in circumstances. Nevertheless, considering the factors set forth in La. C.C. art. 134 for determining the best interest of the children, along with the testimony, evidence, and the | ^recommendations of the court-appointed custody evaluator, we find no error in the trial court’s finding that a change of custody was in the best interest of the children.
DECREE
For the foregoing reasons, we affirm the trial court’s judgment, rendered on October 23, 2015 and signed on December 2, 2015, awarding joint custody to the parties with Deborah designated as the primary domiciliary parent.
AFFIRMED

. Ms. Pesses had previously performed a custody evaluation in the case in 2008.

. The trial court stated that it felt compelled to make a change in custody due to the parties’ inability “to parent together, to make decisions together, and to make this work together,” but she did not indicate that this was a material change in circumstances.

. Citing Harvey v. Harvey, 10-1338 (La.App. 3 Cir. 3/9/11), 56 So.3d 467, writ denied, 11-719 (La. 4/29/11), 62 So.3d 117.

. Citing Evans v. Lungrin, 97-0541 (La. 2/6/98), 708 So.2d 731.

. Citing Shaffer v. Shaffer, 00-1251 (La.App. 1 Cir. 9/13/00), 808 So.2d 354, writ denied, 00-2838 (La. 11/13/00), 774 So.2d 151.

. Citing Wages v. Wages, 39,819 (La.App. 2 Cir. 3/24/05), 899 So.2d 662.

. Citing Pizzolato v. Hihar, 02-53 (La.App. 5 Cir. 6/26/02), 822 So.2d 835; and Hebert v. Blanchard, 97-550 (La.App. 3 Cir. 10/29/97), 702 So.2d 1102.