REANDA PIERRE

VERSUS

PARIS PHILLIP PIERRE

NO. 23-CA-470

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-NINTH JUDICIAL DISTRICT COURT
PARISH OF ST. CHARLES, STATE OF LOUISIANA
NO. 87,657, DIVISION "D"
HONORABLE M. LAUREN LEMMON, JUDGE PRESIDING

February 21, 2024

**SCOTT U. SCHLEGEL**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Stephen J. Windhorst, and Scott U. Schlegel

**AFFIRMED**
   **SUS**
   **SMC**
   **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUB RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
REANDA PIERRE
    Reanda Pierre

COUNSEL FOR DEFENDANT/APPELLANT,
PARIS PIERRE
    Eric E. Malveau

**SCHLEGEL, J.**

Appellant, Paris Phillip Pierre, appeals the trial court's judgment of March 28, 2023, which granted to Reanda Pierre, appellee, sole custody of the couple's four minor children pursuant to the Post-Separation Family Violence Relief Act, La. R.S. 9:361, *et seq.* (PSFVRA), with supervised visitation by Mr. Pierre according to the conditions set forth in the judgment. For the following reasons, we affirm the judgment of the trial court.

*Background and Procedural History*

Mr. and Ms. Pierre were married on April 20, 2011. Four children were born of the marriage: PPP (born 2013); PP (born 2015); Ed.P (born 2016); and El.P (born 2019). On March 2, 2020, Ms. Pierre filed a petition for divorce under La. C.C. art. 103(1). The petition did not raise any issues of domestic violence. On December 17, 2020, the trial court granted an Article 103(1) divorce, and reset the issues of custody and domiciliary status to March 23, 2021.

On March 23, 2021, Mr. Pierre and Ms. Pierre both appeared by Zoom as self-represented litigants and were sworn in. The trial court conducted the hearing in a manner similar to a settlement conference. During the hearing, they discussed Mr. Pierre and Ms. Pierre's work schedules; arrangements regarding physical custody of the children; the children's schools and teachers; potential doctor visits; and other issues as to conflicts and potential counseling. There was no testimony or allegations about domestic violence. In fact, the trial court stated: "[s]top. I don't want to talk about anything previous. We are moving forward and we have an agreement. There is no reason for either of y'all to bring up the previous. I am not doing that. We are moving forward." The court minutes indicate that the "[p]arties reach[ed] an agreement."

The judgment from the March 23, 2021 hearing ordered that the parties were to have joint physical custody of the minor children, and stated that "[b]ecause this

is a high conflict matter, Ms. Pierre is designated as the domiciliary parent." The judgment further designated a specific custody schedule, including transportation of the children for custody; implemented rules as to how the non-custodial parent was to FaceTime with the children; ordered that communication was to occur only through Our Family Wizard; ordered that Mr. and Ms. Pierre were to attend co-parenting counseling; and ordered separate counseling for Mr. Pierre and Ms. Pierre.

On April 30, 2021, only one month after entering into the consent judgment, Ms. Pierre filed a petition for protection from stalking. The petition related the most recent incident of stalking that occurred when she traveled to Ponchatoula, Louisiana for her scheduled custody time with the children, which occurred on April 26, 2021. The petition also referred to previous incidences of domestic abuse, including an occurrence on January 3, 2021, in which Mr. Pierre choked Ms. Pierre while the children were in the home; an occurrence on April 15, 2016 that included Mr. Pierre grabbing Ms. Pierre by the neck, picking her up and throwing her to the ground; and an occurrence on February 3, 2014 in which Mr. Pierre choked Ms. Pierre in the presence of his parents. A temporary restraining order was granted, and the hearing on the protective order was set for May 19, 2021.

At the May 19, 2021 hearing on Ms. Pierre's petition for protection,[1] the trial court granted the Protective Order, and ordered Mr. Pierre not to go within 100 yards of Ms. Pierre, her residence, or her place of employment, and not to contact family members or acquaintances of Ms. Pierre. The protective order again ordered the parties to exchange information regarding the children only on Our Family Wizard; ordered that neither party post on social media about the other

---

[1] The trial court's Reasons for Judgment indicate that the hearing was on May 20, 2021, but the hearing occurred on May 19, 2021, with the order signed the same day. The Clerk's Office docketed the order on May 20, 2021.

party; ordered Mr. Pierre to enroll in domestic violence counseling and co-parenting classes; and ordered Ms. Pierre to enroll in trauma counseling. The Protective Order was effective until November 19, 2022.

Six months later, on December 17, 2021, Mr. Pierre filed a petition for *ex parte* temporary sole custody alleging, *inter alia*, that Ms. Pierre had removed the children and enrolled them in school in Florida, and that she told him only after she had moved them to Florida. On that date, the trial court ordered that Mr. Pierre be awarded temporary physical custody of the children; that Ms. Pierre return physical custody of the children to Mr. Pierre; that a civil warrant be issued for the children to be returned to Mr. Pierre, as temporary custodial parent; and that Ms. Pierre be given restricted and supervised visitation rights with the children pending a hearing on January 18, 2022.

On January 10, 2022, before the hearing, Ms. Pierre filed an exception of no right of action and an *ex parte* petition for temporary custody, civil warrant, and sanctions against Mr. Pierre, and an answer and reconventional demand to the *ex parte* petition filed by Mr. Pierre.

On February 2, 2022, the trial court was set to hear the outstanding matters that had been filed by both parties. But before the hearing began, the parties entered into a consent judgment, which was read into the record and agreed to by the parties after they were both placed under oath. The judgment was signed by the trial court on May 5, 2022. Under the consent judgment, Mr. Pierre was provided supervised visitation with the minor children until he completed a domestic violence program, at which point custody would revert back to the schedule contained in the judgment of March 23, 2021. The judgment again provided that neither party was to post about the children on social media, and that the parties were to use the Family Wizard Program.

Only two months later, on April 13, 2022, Ms. Pierre filed a rule to modify the February 2, 2022 consent judgment on the grounds that Mr. Pierre's visitations had not been supervised. She further alleged that he was alienating the children from her. Ms. Pierre sought to be awarded sole custody, and an order that Mr. Pierre's visitations with the children were to be supervised by a third-party who was not a family member of his until co-parenting counseling was successfully completed. Ms. Pierre also filed a rule for contempt. The rules were set for May 26, 2022.

On May 26, 2022, the trial court heard limited testimony before suspending the hearing. Ms. Pierre testified that she suffered significant domestic violence during their relationship, including strangulation and sexual abuse. And Mr. Pierre played a video of conflict by the oldest child towards Ms. Pierre that raised grave concerns for the trial court. Due to the serious allegations made at the onset of the hearing, the trial court terminated the proceedings, ordered the parties to revert back to the February 2, 2022 consent judgment, but with supervised visitation for Mr. Pierre, and ordered a custody evaluation. Dr. Ashley Weiss was appointed as the custody evaluator on August 16, 2022. Two days later, on August 18, 2022, the trial court continued the previously set trial dates until the custody evaluation could be completed.

On July 21, 2022, Ms. Pierre filed a request for clarification of order from May 26, 2022. On October 31, 2022, the trial court entered an Order Clarifying Visitation Pending Custody Evaluation and Subsequent Hearing, which clarified that the parties would be governed by the February 2, 2022 consent judgment, with visitation by Mr. Pierre to be supervised. On December 15, 2022, the Court entered a judgment from the May 26, 2022 hearing, which also clarified the custody schedule set forth in the March 23, 2021 judgment. This "interim judgment" recognized that no written judgment had been filed after the May 26,

2022 hearing, and indicated that the court "now issues said judgment." The interim judgment provided that Mr. Pierre was permitted supervised visitation of the children on specified days. Of particular significance, the interim judgment voided the provision of the February 2, 2022 consent judgment that would have permitted a return to the custody schedule set forth in the March 23, 2021 judgment upon proof of Mr. Pierre's successful completion of a domestic violence program.

On November 18, 2022, Ms. Pierre filed a motion to modify the protective order that had been previously granted by the Court on May 19, 2021. The duty judge granted a temporary restraining order, and set a hearing on the protective order for November 29, 2022. After considering testimony and evidence, the trial court granted Ms. Pierre's motion to modify protective order and made it permanent, with a "Does Not Expire" notation. The trial court further ordered that the children's cell phones and tablets were to stay at Mr. Pierre's home.

The custody trial that began on May 26, 2022 was eventually completed and held over another six days: February 10, 22, 23, 24, and March 6 and 7, 2023. On March 28, 2023, the trial court issued a Judgment on Custody and Incidental Matters and Incorporated Reasons for Judgment from the custody trial. The judgment ordered that:

(1) Ms. Pierre was given sole custody of the minor children pursuant to the PSFVRA;

(2) Mr. Pierre was to have supervised visitation of the minor children by a competent professional approved by the court before the supervised visits begin;

(3) Ms. Pierre was to continue trauma therapy;

(4) Mr. Pierre was to seek individual therapy for batterers;

(5) the two oldest children were to attend reunification therapy, and the two youngest children would also participate if the therapist determined it was needed;

(6) neither party nor their families were allowed to post on social media regarding the other party, custody, visitation, or any court proceeding; and

(7) Ms. Pierre was to have exclusive use and occupancy of the former marital home, with Mr. Pierre remaining responsible for the mortgage pending partition, while reserving his rights to rental reimbursement.

On April 12, 2023, Mr. Pierre filed a notice of appeal from the March 28, 2023 judgment, and also filed a motion for suspensive appeal. The trial court granted the motion for suspensive appeal on April 14, 2023.

*Assignments of Error*

Mr. Pierre asserts that the trial court erred in rendering the judgment of March 28, 2023 as follows:

• the trial court erroneously found a material change in circumstances to modify custody;

• the trial court erred in admitting evidence of abuse prior to the February 2, 2022 consent judgment and the judgment of March 23, 2021;

• the trial court erred in applying the PSFVRA;

• after applying the PSFVRA, the trial court erred by finding that Mr. Pierre did not meet the requirements for custody under La. R.S. 9:364 and that granting him custody of the minor children was not in the children's best interest; and

• the trial court erred in granting Ms. Pierre exclusive use of the family home.

*Law and Discussion*

A. *Standard of Review*

Every child custody case must be viewed in light of its own particular set of facts and circumstances. *Olavarrieta v. Robeson*, 22-158 (La. App. 5 Cir. 7/6/22), 345 So.3d 1103, 1107. The trial court is therefore in the best position to determine the best interest of the child given each unique set of circumstances. *Id.*

A trial court's determination in a child custody case will not be disturbed unless there is a clear abuse of discretion. *Obi v. Onunkwo*, 23-116 (La. App. 5 Cir. 12/6/23), 2023 WL 8446297 at *4. Additionally, it is well-settled that an appellate court cannot set aside the family court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. *Id.*; *Bordelon v. Thiele*, 23-336 (La. App. 5 Cir. 12/27/23), 2023 WL 9317788 at *8. If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Obi v. Onunkwo*, 2023 WL 8446297 at *4; Bordelon *v. Thiele*, 2023 WL 9317788 at *8. In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong and manifestly erroneous. *Id.* at *8. The trial court has vast discretion in custody determinations. *Guidry v. Guidry*, 18-639 (La. App. 5 Cir. 5/22/19), 274 So.3d 709, 715.

B. *Whether the judgment of March 23, 2021 was a considered decree or a consent judgment*

Mr. Pierre argues that the trial court's judgment of March 28, 2023 erroneously found a change in circumstances from previous judgments. He further argues that the previous judgment of March 23, 2021 was a considered decree

because it was rendered after testimony. As such, a higher standard of proof would be required before the trial court could change it.

Accordingly, we first consider whether the March 23, 2021 judgment was a considered decree or a consent judgment.

The Louisiana Supreme Court recognizes a distinction between two types of custody awards. *E. R. v. T. S.*, 18-286 (La. App. 5 Cir. 10/11/18), 256 So.3d 551, 557, *writ denied,* 18-1843 (La. 2/18/19), 264 So.3d 451. One type of custody award is a "considered decree", which is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children. *Id.* The second type of custody award is a "stipulated judgment" or "consent judgment", which a court renders when the parties consent to a custodial arrangement, and no evidence of parental fitness is taken. *Id.*; *Boesch v. Boesch*, 16-526 (La. App. 5 Cir. 2/8/17), 210 So.3d 937, 944.

Different burdens of proof apply to each of the two types of custody awards. *E. R.*, 256 So.3d at 557. The jurisprudential requirements of *Bergeron v. Bergeron*, 492 So.2d 1193 (La. 1986), are applied to actions to change custody rendered in considered decrees. *Id.* That is, the proponent of change must show that a change of circumstances materially affecting the welfare of the child has occurred since the prior order respecting custody. *Id.* Additionally, for considered decrees, the party seeking a change bears the heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. *Id.* at 557-58.

In contrast to considered decrees, in cases where custody has been established by a stipulated judgment or consent judgment, the party seeking modification must prove: (1) that there has been a material change of

circumstances since the original custody arrangement was entered, and (2) that the proposed modification is in the best interest of the child. *Id.* at 558; *Bourgeois v. Bourgeois*, 16-676 (La. App. 5 Cir. 4/12/17), 218 So.3d 684, 689.

In the case at bar, the March 23, 2021 judgment is entitled "Judgment", not "Interim Judgment", and uses decretal language, "the court orders, adjudges, and decrees". This suggests it is a considered decree. But the Reasons for Judgment state: "[o]n March 23, 2021, the Court heard some testimony from Mr. Pierre and Ms. Pierre. Thereafter, the parties entered another **interim** agreement of joint custody, with Ms. Pierre being designated the domiciliary parent." (Emphasis in original). Further, Mr. Pierre and Ms. Pierre appeared by Zoom, were sworn in and questioned by the Judge as if it was a settlement conference rather than a contradictory hearing. During the hearing, the trial court and parties discussed Mr. Pierre and Ms. Pierre's work schedules, living arrangements, and the children's schools. The trial court even stopped the parties at one point and stated: "[s]top. I don't want to talk about anything previous. We are moving forward and we have an agreement. There is no reason for either of y'all to bring up the previous. I am not doing that. We are moving forward."

Thus, we conclude that the March 23, 2021 judgment was a consent judgment, not a considered decree.

C. *Whether the trial court erred by considering evidence of abuse prior to the consent judgments of March 23, 2021 and February 2, 2022*

On February 2, 2022, the parties entered into a consent judgment, which was signed by the trial court on May 5, 2022. This judgment provided for supervised visitation of Mr. Pierre with the minor children until he completed the domestic violence program, at which point custody would revert to the schedule in the judgment of March 23, 2021. Thereafter, on April 13, 2022, Ms. Pierre filed a motion to modify the February 2, 2022 consent judgment. This motion to modify

custody filed by Ms. Pierre led to the judgment of March 28, 2023, which is the subject of this appeal.

Mr. Pierre argues that the trial court erred in admitting evidence of abuse prior to the February 2, 2022 consent judgment and the consent judgment of March 23, 2021. More specifically, Mr. Pierre argues that Ms. Pierre should have been limited to presenting only incidents that took place after the February 2, 2022 consent judgment. He submits that allegations of abuse prior to these judgments are barred by the doctrine of *res judicata*. In response, Ms. Pierre argues that Mr. Pierre did not preserve the issue of hearing testimony prior to February 2, 2022, so it may not be reviewed on appeal, and further that Mr. Pierre's notice of appeal was from the March 28, 2023 considered decree, not the other consent judgments.

The doctrine of *res judicata*, set forth in La. R.S. 13:4231, provides:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> > (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
> >
> > (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
> >
> > (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

Therefore, a second action is precluded when all of the following are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the

subject matter of the first litigation. La. R.S. 13:4231; *Duncan v. Duncan*, 18-85 (La. App. 5 Cir. 12/19/18), 262 So.3d 435, 439, *writ denied,* 19-0119 (La. 2/25/19), 266 So.3d 291, *citing Burguieres v. Pollingue*, 02-1385 (La. 2/25/03), 843 So.2d 1049, 1053.

La. R.S. 13:4232 sets forth exceptions to the general rules of *res judicata*. It provides that in actions for matters incidental to divorce, "the judgment has the effect of *res judicata* only as to causes of action actually adjudicated." La. R.S. 13:4232(B). Child custody and visitation are matters incidental to divorce. La. C.C. art. 105. Because child custody is a matter incidental to divorce, when a party raises new allegations pertaining to changes in circumstances affecting a child's best interest, the limitation to the general *res judicata* rules set forth in La. R.S. 13:4232(B) applies. *See Duncan*, 262 So.3d at 439 (The limitation of La. R.S. 13:4232(B) applies to child support, as a matter incidental to divorce under La. C.C. art. 105, when a party raises new allegations pertaining to changes in circumstances affecting a child's best interest.)

Judgments awarding custody and child support are always subject to modification and are thus never final. *Olavarrieta*, 345 So.3d at 1108. When considering the safety and best interest of the child, ordering supervised visitation is within the trial court's vast discretion. *Guidry*, 274 So.3d at 715. Every child custody case must be viewed within its own peculiar set of facts. *Theriot v. Theriot*, 15-311 (La. App. 5 Cir. 10/14/15), 177 So.3d 759, 765, *citing Raney v. Wren,* 98–869 (La. App. 1 Cir. 11/6/98), 722 So.2d 54, 56. The trial judge is in the best position to ascertain the best interest of the child given each unique set of circumstances. *Id.*

Although evidence of abuse that occurred prior to consent judgments would generally be inadmissible under the doctrine of *res judicata*, under the circumstances of this case, the trial court appropriately considered the evidence of

strangulation and abuse by Mr. Pierre that occurred prior to the consent judgments of March 23, 2021 and February 2, 2022, as discussed more fully below.

In *Manno v. Manno,* 49,533 (La. App. 2 Cir. 11/19/14), 154 So.3d 655, 664, because the original custody decree was a consent judgment, the Louisiana Second Circuit Court of Appeal affirmed the trial court's conclusion that in order to modify the prior custody arrangement, either party must show a material change in circumstances *after* the consent judgment. The Second Circuit affirmed the trial court's conclusion that the parties had previously had a full and fair opportunity to litigate sexual abuse charges.

In the pending case though, there was ample evidence of a material change in circumstances after the consent judgments that the trial court could have relied upon without considering the abuse that occurred prior to the consent judgments. In addition, at the hearings, Mr. Pierre objected to Ms. Pierre testifying about prior incidences of strangulations based upon relevancy of the evidence, not *res judicata*. Whether evidence is relevant or not is within the discretion of the trial court, and its ruling will not be disturbed absent a clear abuse of discretion. *Raney*, 722 So.2d at 57. As further explained in *Raney v. Wren*,

> However, application of the change in circumstances rule to this case does not automatically preclude the introduction of all evidence of facts occurring prior to the stipulated custody judgment. The trial court should not exclude evidence in a custody modification proceeding if that evidence is relevant and material to an issue which the parties have not previously had 'a full and fair opportunity to litigate'. (Citation omitted).

*Id. See also Gonzales v. Gonzales*, 21-172 (La. App. 5 Cir. 7/2/21), 2021 WL 2766900 at *2, *writ denied,* 21-01211 (La. 11/10/21), 326 So.3d 1251 ("Given that the best interests of the child is of paramount consideration, and the relief sought in the petition for protection from abuse necessarily involves a custody determination, the trial court was within its discretionary authority in ruling that a relaxed evidentiary standard applies here.")

Similarly, the Second Circuit Court of Appeal in *Crowson v. Crowson*, 32,314 (La. App. 2 Cir. 9/22/99), 742 So.2d 107, 110, recognized that whether evidence is relevant or not is within the discretion of the trial court. *Crowson* found that evidence of incidents prior to entry of the stipulated judgment may not be relevant to prove a change in circumstances, but may remain relevant to the issue of the best interest of the child. *Id.* *Crowson* concluded that the trial court should not exclude evidence in a custody modification proceeding if that evidence is relevant and material to an issue which the parties have not previously had a full and fair opportunity to litigate. *Id.*

While we agree that the evidence of strangulation, prior to the consent judgments, would generally be inadmissible under the doctrine of *res judicata*, we find that it is certainly relevant in this specific case. The abusive behavior did not cease after the consent judgments and thus, it was necessary for the trial court to hear the evidence of abuse perpetrated by Mr. Pierre against Ms. Pierre prior to the consent judgments, because it related to the history and high parental conflict between them. An understanding of the history was necessary for the trial court to determine the best interests of the children.

Notably, Mr. Pierre was under a protective order when the parties entered into the February 2, 2022 consent judgment, and before its expiration, Ms. Pierre filed a motion to modify protective order, which was granted and made permanent on November 29, 2022. The testimony about the strangulations was so interwoven with the parties' history that it would have been virtually impossible for the trial court to separate out the events that occurred only after the consent judgments without considering the events that occurred before the consent judgments.

Thus, considering the unique set of circumstances of this case, we find that the trial court did not abuse its discretion in considering Mr. Pierre's history of

physical abuse that occurred before the consent judgments of March 23, 2021 and February 2, 2022.

D. *Whether the trial court erred in finding a material change in circumstances from the February 2, 2022 consent judgment*

Mr. Pierre argues that the trial court erred in finding a material change in circumstances to modify custody.

In order to modify the February 2, 2022 consent judgment, Ms. Pierre had the burden to prove: (1) that there was a material change of circumstances since the original custody arrangement was entered, and (2) that the proposed modification was in the best interest of the children.

*Hearings after February 2, 2022*

Based upon the evidence presented, we cannot say that the trial court erred when it found that Ms. Pierre had proved a change in circumstances following the February 2, 2022 consent judgment. After the February 2, 2022 consent judgment, Ms. Pierre continued filing motions to bring new facts to the court's attention and to have the court's judgments enforced:

• Apr. 13, 2022 – Rule to modify custody from February 2, 2022 consent judgment;
• Apr. 13, 2022 – Rule for contempt;
• Nov. 18, 2022 – Motion to modify the protective order of May 19, 2021.

On May 26, 2022, the Court heard Ms. Pierre's rule to modify custody and rule for contempt. Ms. Pierre alleged that Mr. Pierre's visitations had not been supervised; he had told the children that it was Ms. Pierre's fault that he couldn't see the children more; he was alienating the children; and he sent his mother to harass Ms. Pierre. Ms. Pierre sought sole custody and supervised visitation with a neutral third-party, who was not a family member, until co-parenting therapy was successfully completed.

The trial court heard brief testimony, which included allegations that Ms. Pierre had suffered serious domestic violence, strangulation, and sexual abuse from

Mr. Pierre. Specifically, the trial court heard testimony that Mr. Pierre had choked Ms. Pierre with the children present in the house on numerous occasions. The court also heard testimony about a time when the oldest child threw his phone after Ms. Pierre told him to brush his teeth, screamed that Ms. Pierre was a witch, and said she was going to poison him. Ms. Pierre testified that this was not normal behavior for her children. The trial court also viewed a video introduced by Mr. Pierre of high conflict by the oldest child towards his mother. The trial court found: "I saw a sick child", and "[t]his is a mentally ill situation. Y'all are in crisis. Y'all are in chaos. This dance has been going on for a very long time." Based on the seriousness of the testimony, the trial court reset the trial on Ms. Pierre's rule to modify custody, reinstituted supervised visitation for Mr. Pierre and appointed a custody evaluator. A trial date was then set for September 6 and 7, 2022, to give the custody evaluator time to complete the evaluation.

As noted above, Ms. Pierre filed a motion to modify protective order on November 18, 2022 because she still feared for her safety and for her life. She testified as to threats of violence upon her that came up during the custody evaluation with Dr. Weiss on November 18, 2022. She referred to a "death parable" that Mr. Pierre told the children about King Solomon. She stated that during a meeting with Dr. Weiss, Mr. Pierre said that if Ms. Pierre wanted their children to be safe or for there not to be threats, she would not ask for sole custody. She stated:

> If I was the real parent then I would not be willing to take the kids away from him because the parable is where each mother is claiming that the child should be with them individually and that is what we were having a conversation with Dr. Weiss over. The real mother would give up the child because she loved the children. If not, the king would kill them or kill the child. For me, it was either not ask for sole custody or lose my kids. And I called him out on that in front of Dr. Weiss. The conversation was recorded. I asked for permission. And I told him that you are doing it again. You are using scripture to manipulate and to threaten me to give you what you want.

She also testified that Mr. Pierre was keeping track of her whereabouts by using the trackers on the children's cell phones and tablets. If she tried to take away their cell phones and tablets, the children got angry. Mr. Pierre had told the children that Ms. Pierre was controlling whether or not they could talk to him.

Mr. Pierre denied that he was following Ms. Pierre. As to the parable, Mr. Pierre testified:

> I did bring up the parable for -- with the kids to show how during that parable, the mother did not want their child to be subjected to pain and that's how the king found out who the mother was. That was a comparison to what she is doing with our kids. She's currently and constantly subjecting them to emotional, mental, and physical abuse. And it's been going on since June 2022 of this year -- since our last court date on May 26th.

He also accused Ms. Pierre of emotional, mental, and physical abuse, by denying custody exchanges. The allegations of physical abuse involved the recordings of the oldest child allegedly abusing himself while in the care of Ms. Pierre.

At the conclusion of the hearing on November 29, 2022, the trial court granted Ms. Pierre's motion to modify protective order, with the notation that the order "Does Not Expire". Mr. Pierre did not object to the entry of a protective order against him. The protective order required Mr. Pierre not to abuse or stalk Ms. Pierre, not to contact Ms. Pierre personally or through a third party, not to go within 100 yards of her home or work, not to contact family members or acquaintances of Ms. Pierre, and to exchange information via Our Family Wizard only. The order further required that the children's cell phones and tablets were to stay at Mr. Pierre's home.

*The Trial*

During the seven-day custody trial, the trial court heard extensive testimony, appropriately considered the history of the interactions between the parties, and received numerous exhibits. At the conclusion, the court found that "Mr. Pierre has strangled her on five occasions, two of which Mr. Pierre admitted

to during the trial." The Reasons further indicated that Mr. Pierre's parents witnessed at least one strangulation, and all grandparents had witnessed a significant amount of the parties' high conflict.

During the trial, Ms. Pierre testified that following the 2016 strangulation, her eyes were starting to get blurry, she screamed "Jesus", and looked down and saw her three-year old, PPP (born 2013), in the kitchen, where they were. She said that Mr. Pierre minimized the strangulation, telling her "[i]t wasn't that bad, that I wasn't in the hospital, I didn't have black eyes, although I had to go to the ER and get an X-ray because I could not put my head down to look at my child." She said the strangulations got progressively worse. Mr. Pierre admitted that he initiated the April 2016 choking incident. She stated that the worst (and last) strangulation occurred on January 3, 2021, following their divorce on December 17, 2020. She could not breathe afterwards, and if Mr. Pierre's brother had not pulled him off of her, "I did not know if I would still be alive."

Ms. Pierre testified that after an incident in February 2014 when he choked her, she told him she wanted a divorce. They argued about who would get custody of their child, and Mr. Pierre said "[i]f you ever take our child from me, he won't have any parents because I'll kill you . . . yeah. If you ever take the children – well, the child, I'll kill you and I guess he won't have any parents because I'm not going to jail and I'll kill myself, too." The trial court considered this testimony, finding "Ms. Pierre alleged that in 2014, she discussed divorce with Mr. Pierre, and that Mr. Pierre told her that if his children were ever taken from him, he would kill her." This testimony was particularly relevant to understand the death parable story and why Ms. Pierre continued to fear for her life and safety after entering into the February 2, 2022 consent judgment.

*Testimony on Custody Evaluation*

The trial court considered the testimony and custody evaluation of Dr. Ashley Weiss, who recommended that the parties share custody. The trial court found that Dr. Weiss did not address the PSFVRA or focus on issues surrounding domestic violence. Further, the trial court considered that this was Dr. Weiss's first unsupervised custody evaluation, and that she had a minimum level of training and experience in custody matters and evaluations and in family dynamics. The trial court pointed out that Dr. Weiss did not contact the co-parenting therapist who had discontinued co-parenting therapy due to the parties' high conflict, nor did she deem it necessary to contact Mr. Pierre's therapist. The trial court also found:

> Interestingly, the custody evaluator testified that when she interviewed the children, she asked what brought them to see her. The oldest child responded they were there for a custody evaluation because of the kidnaping [*sic*]. Considering all of the above, the Court cannot accept the evaluator's recommendation of joint custody and 'co-domiciliary' status for the parties.

The trial court also heard testimony from Mary Jo Devlin, LCSW, who provided trauma therapy for Ms. Pierre, and found her to be more credible. Ms. Devlin specializes in trauma resolution therapy, family systems therapy, and parental roles in relationships involving trauma, including how family violence impacts children. Ms. Devlin, who has 51 years of experience in her field, testified that batterers have an attitude of ownership and possession towards their partners. She also opined that strangulation, even without marks, is the deadliest form of domestic violence and a strong predictor of homicide.

Ms. Devlin opined that the strangulations are always a message by the batterer that the batterer is in control of the victim's life and death, and that Mr. Pierre wanted to move forward and not keep talking about the strangulations. He also apparently did not like the word "strangulation" when testifying, and preferred the word "choking". She testified that there is a difference between choking and strangulation: "Choking is when you have something caught in your windpipe that

doesn't allow you to breathe correctly. Strangulation means you put your hands around somebody's throat and try to cut off the air that way."

Ms. Devlin also testified that once batterers cannot get to their victims, they use the children to inflict pain on their victims. She further opined that batterers have an attitude of ownership and possession of their children as well as their ex-partners, and often "weaponize" their children against their ex-partners.

The trial court heard from Ms. Pierre that the children told her that Mr. Pierre called Ms. Pierre a "thief" because she steals Mr. Pierre's visitation time with the children. Mr. Pierre also played a recording of a physical conflict between Ms. Pierre and the oldest child, demonstrating that the oldest child is angry and aggressive. The oldest child is heard saying that his mother makes potions and makes people bad. Mr. Pierre argued that the oldest child physically abused himself because of trauma caused by the actions of parental alienation caused by Ms. Pierre.

During Ms. Devlin's testimony, she described an additional audio of the oldest child yelling at Ms. Pierre, saying he would mess her up, calling her stupid and a witch, and undermining her authority. Ms. Pierre had previously testified that throughout their relationship, Mr. Pierre often told her he would "mess her up" and that she needed to "get her head straight." Ms. Devlin opined that children of batterers curry the batterers' favor by mimicking the behaviors of the batterers that children think this behavior is acceptable, and that this type of behavior will typically only happen at the mother's house, not in the home of the batterer.

Mr. Pierre attempted to downplay his part in the conflict and abuse. He testified several times that he did not want to focus on the past and just wanted to move forward. He did not want the abuse to be part of the trial, saying, "the past does not determine the future." Mr. Pierre testified that he had initiated the

physical fights with Ms. Pierre only one time, and that otherwise, Ms. Pierre started the physical conflicts that led him to strangle her.

Ms. Devlin further opined that batterers try to create allies in their families and in ex-partners' families to interfere with their ex-partner's relationships with family members and to make the ex-partners look bad. Ms. Pierre testified and introduced text messages to show that Mr. Pierre often sent group texts and called her parents, siblings, and aunt, driving a wedge in her family of origin relationships.

The trial court found that significant evidence demonstrated that Mr. Pierre weaponizes the children, especially the oldest child, and that the second child's anger toward Ms. Pierre is increasing. The parties were ordered not to discuss custody matters with the children, not to discuss the other parent with the children, and not to discuss visitation issues with the children. The trial court found, however, that Mr. Pierre's actions have caused and continue to cause substantial harm to the children. As to Ms. Pierre, the trial court found that she was not violent or an abuser and that Mr. Pierre was not a victim. Both parties testified that the physical violence usually started with some disagreement or behavior, such as taking a cell phone or a video game.

Considering the evidence elicited over the seven-day custody trial and after a careful review of the record, we cannot find that the trial court erred when it concluded that there has been a material change in circumstances since the February 2, 2022 consent judgment was entered.

E. *Best interest of the children / Post-Separation Family Violence Relief Act*

We consider the second prong for modifying a consent judgment – whether the proposed modification is in the best interest of the child – in conjunction with our analysis of the PSFVRA, La. R.S. 9:361, *et seq.*

Mr. Pierre argues that the allegations of abuse that the trial court relied on in its ruling all took place prior to March 23, 2021 or February 2, 2022.  As discussed previously, we conclude that the trial court did not abuse its discretion by considering evidence of abuse prior to the consent judgments of March 23, 2021 and February 2, 2022.

Alternatively, Mr. Pierre argues that even if the allegations of abuse were found to be admissible, he would meet the requirements of La. R.S. 9:364 and thus, be allowed to have custody and unsupervised visitation with the minor children.

La. R.S. 9:364, the provision of the PSFVRA that concerns child custody and visitation, provides in pertinent part:

> A. There is created a presumption that no parent who has a history of perpetrating family violence, as defined in R.S. 9:362, or domestic abuse, as defined in R.S. 46:2132, or has subjected any of his or her children, stepchildren, or any household member, as defined in R.S. 46:2132, to sexual abuse, as defined in R.S. 14:403, or has willingly permitted another to abuse any of his children or stepchildren, despite having the ability to prevent the abuse, shall be awarded sole or joint custody of children. The court may find a history of perpetrating family violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence.
>
> B. The presumption shall be overcome only if the court finds all of the following by a preponderance of the evidence:
>
> (1) The perpetrating parent has successfully completed a court-monitored domestic abuse intervention program as defined in R.S. 9:362, or a treatment program designed for sexual abusers, after the last instance of abuse.
>
> (2) The perpetrating parent is not abusing alcohol or using illegal substances scheduled in R.S. 40:964.
>
> (3) The best interest of the child or children, considering the factors listed in Civil Code Article 134, requires the perpetrating parent's participation as a custodial parent because of the other parent's absence, mental illness, substance abuse, or other circumstance negatively affecting the child or children.
>
> C. The fact that the abused parent suffers from the effects of the abuse shall not be grounds for denying that parent custody.
>
> . . .

E. If the court finds that a parent has a history of perpetrating family violence, the court shall allow only supervised child visitation with that parent pursuant to R.S. 9:341.

Consequently, La. R.S. 9:364(A) creates a presumption that the parent with a history of perpetrating domestic abuse shall not be awarded sole or joint custody of the children. La. R.S. 9:364(E) further provides that the parent with a history of perpetrating domestic abuse shall be allowed only supervised child visitation with that parent.

The trial court found that Mr. Pierre has a history of perpetrating family violence, and that the provisions of the PSFVRA apply. As set forth above, this finding of the trial court was not an abuse of discretion.

La. R.S. 9:364(B) provides that the presumption shall be overcome "only if the court finds *all of the following* by a preponderance of the evidence." La. R.S. 9:364(B) (emphasis added). We thus consider each of the three factors of Section La. R.S. 9:364(B).

The trial court acknowledged that Mr. Pierre completed the domestic abuse intervention program as set forth in La. R.S. 9:364(B)(1) and further found that the provisions of La. R.S. 9:364(B)(2) did not apply because the evidence did not support that Mr. Pierre abuses alcohol or illegal drugs. But the third prong of La. R.S. 9:364(B)(3) requires an analysis of the best interest of the children considering the factors listed in La. C.C. art. 134.

The trial court conducted an extensive analysis of the twelve factors of the best interest of the children under La. C.C. art. 134, and found that limited, supervised visitation by Mr. Pierre was in the best interest of the children.

As an appellate court, we will not second-guess the district court's credibility determinations. *E. R.*, 256 So.3d at 562. Where conflict exists in the testimony, a factfinder's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though an appellate

court may feel its own evaluations and inferences are more reasonable than the factfinder's. *Id.*

The trial court analyzed the evidence from the seven-day custody trial at great length and analyzed the factors of the best interest of the children. We conclude that the trial court did not abuse its discretion.

Finally, we consider La. R.S. 9:364(C), which provides that: "[t]he fact that the abused parent suffers from the effects of the abuse shall not be grounds for denying that parent custody." On this point the trial court found:

> No evidence was presented demonstrating any behavior by Ms. Pierre that negatively affects the children. Ms. Pierre suffers from the effects of abuse by Mr. Pierre. Mary Jo Devlin testified at length that Ms. Pierre has worked to overcome and heal from the effects of abuse. Further, Ms. Pierre's testimony and demeanor support the Court's conclusion that she is invested in the healing process.

The trial court made extensive findings of fact and conclusions of law. The trial court found that "Ms. Pierre suffers from a history of mental, verbal, and physical abuse by Mr. Pierre. Further, the Court finds that Mr. Pierre perpetrated that violence, physical and mental abuse, and manipulation toward Ms. Pierre throughout their relationship."

Again, the trial court held a custody trial over seven days. The court heard from numerous witnesses, including Ms. Pierre, Mr. Pierre, several family members, Dr. Weiss, and Ms. Devlin. The trial court's well-reasoned decision was amply supported by the evidence. Thus, we cannot say that the trial court's conclusions as to the best interest of the children was an abuse of discretion. Further, the trial court did not abuse its discretion when it awarded Ms. Pierre sole custody of the children with supervised visitation by Mr. Pierre in accordance with the provisions of La. R.S. 9:364(B) of the PSFVRA.

F.  *Exclusive use and occupancy of the family home*

Finally, Mr. Pierre argues that Ms. Pierre was erroneously granted the exclusive use of the family home because of the custody determination.

LSA–R.S. 9:374(B) provides:

> When the family residence is community property or is owned by the spouses in indivision, or the spouses own community immovables . . . , after or in conjunction with the filing of a petition for divorce, either spouse may petition for, and a court may award to one of the spouses, after a contradictory hearing, the use and occupancy of the family residence and use of community immovables or the community manufactured home pending partition of the property or further order of the court, whichever occurs first. In these cases, *the court shall inquire into the relative economic status of the spouses, including both community and separate property, and the needs of the children, if any, and shall award the use and occupancy of the family residence and the use of any community immovables or the community manufactured home to the spouse in accordance with the best interest of the family.*  If applicable, the court shall consider the granting of the occupancy of the family residence and the use of community immovables or the community manufactured home in awarding spousal support.

(Emphasis added).

Considering the testimony and evidence, particularly the evidence that Mr. Pierre has a regular job and income, while Ms. Pierre has less regular income and is the primary caregiver of four children, we cannot say that the trial court erred in concluding that awarding use and occupancy of the family home to Ms. Pierre was in the best interest of the family.

*Conclusion*

For the foregoing reasons, we affirm the trial court's judgment of March 28, 2023.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**FEBRUARY 21, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-CA-470

**E-NOTIFIED**
29TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE M. LAUREN LEMMON (DISTRICT JUDGE)
ERIC E. MALVEAU (APPELLANT)

**MAILED**
REANDA PIERRE  (APPELLEE)
405 LAC VERRET DRIVE
LULING, LA 70070